UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:01-CR-49 |
| | ) | |
| KENNETH SHEARER | ) | |

**OPINION AND ORDER**

This case has been remanded for resentencing in accordance with the Seventh Circuit's decision in *United States v. Shearer,* 379 F.3d 453 (7th Cir. 2004). Because the appeal in this case was decided after the decisions in *Blakely v. Washington*, 124 S.Ct. 2531 (2004) and the Seventh Circuit's decision in *United States v. Booker,* 375 F.3d 508 (7th Cir. 2004) ("Booker I")but prior to the Supreme Court's pronunciation in *United States v. Booker/Fanfan*, 125 S.Ct. 738 (2005) ("Booker II"), the court initially held a status conference on September 22, 2004, wherein the parties agreed to defer resentencing until after the Supreme Court decided *Booker II*. Once the Supreme Court decided *Booker II*, the court requested briefs addressing the application and implementation of the *Booker II* decision to Shearer's case.

On April 22, 2005, the court held an evidentiary hearing wherein Shearer asserted, among other things, that he was being denied necessary medical treatment for a recurrent back impairment at the Federal Correctional Institute to which he was assigned. At the conclusion of that hearing, the Government sought additional time to present rebuttal evidence regarding Shearer's medical condition. In addition, the Court ordered the Government to file copies of Shearer's medical records and provide the same to defense counsel. The additional filings were completed on June 14, 2005. However, on July 6, 2005, defense counsel filed a brief entitled "Defendant's submission in support

1

of reduced Sentence and Request for Sentencing hearing." This filing prompted a telephone conference on July 12, 2005 wherein the court scheduled Shearer for resentencing on July 18, 2005.

## Discussion

A complete recitation of the facts underlying Shearer's conviction can be found in the Seventh Circuit's opinion, 379 F.3d at 455, and this court's prior sentencing memorandum dated October 17, 2003. For present purposes, it suffices to know that a jury convicted Shearer of violating 18 U.S.C. §§842(a)(1), 844(a)(1), and 2, dealing in explosive materials without a license (Count 1); 49 U.S.C. §§5104(b), 5124, and 18 U.S.C. §2, tampering with marking, label or placard required on hazardous material (Count 2); and 18 U.S.C. §§842(a)(3)(A), 844(a)(1), and 2, receiving explosive materials in interstate commerce (Counts 3 and 4).

In the original presentence investigation report the probation officer calculated Shearer's total offense level to be 37, based on a base offense level of 24 because Shearer had committed the offense after sustaining two felony convictions for crimes of violence. After enhancements to his sentence were applied, Shearer faced a hefty sentencing range of 262 to 327 months. Shearer objected to the probation officer's calculations and, after resolving the objections to the PSR, see Order of October 17, 2003, the undersigned concluded that Shearer's total offense level was 25 and his criminal history category was III, giving him a substantially lower guidelines range of 70-87 months. This nearly 200 month reduction from the low-end of the respective guideline ranges was the result of the Government's concession that while Shearer technically qualified under the guidelines for a base offense level of 24, his conduct more appropriately fit into a base offense level 12 rather than a level 24. The rationale for the Government's position was that while Shearer committed the instant offense as a two-time felon thereby qualifying him for a base offense level

24, the guidelines failed to take into account the fact that Shearer had been granted relief from his felony convictions by the ATF so that he could obtain a license to deal in fireworks. Thus, the Government did not oppose the reduction of Shearer's base offense level from 24 to 12.

This said, Shearer's guideline range, even after resolution of his objections, remained considerable because of his criminal history and various enhancements found by the undersigned to be present in his case. For instance, Shearer received a five level increase under U.S.S.G. §2K1.3(b)(1)(E) because the offense involved more than 1,000 pounds of explosive materials; a four level increase pursuant to U.S.S.G. §3B1.1(a) because he was the organizer or leader of five or more participants or the criminal activity was "otherwise extensive"; a two level increase pursuant to U.S.S.G. §3B1.4 because he employed minors to commit the offense; and a two level increase pursuant to U.S.S.G. §3C1.1 because he obstructed justice. The net affect of these enhancements was to nearly quadruple Shearer's guideline range from 15-21 months for the underlying criminal offense to 70-87 months. The undersigned sentenced Shearer to 80 months, the middle of the guideline range.

In his filings and arguments to the court, Shearer seeks a reduction from the original sentence of 80 months to a sentence closer to the 15-21 months he would have received absent the enhancements. The grounds for this request are, essentially, equitable, that is, that it is simply not fair that Shearer received an 80 month sentence for a criminal offense that, by itself, would have yielded only 15-21 months. As part of this "equitable" argument, Shearer claims that the factors listed in 18 U.S.C. §3553(a) mitigate in favor of a non-guidelines sentence. Shearer also seeks a departure on the basis of his medical condition.

In response, the Government acknowledges that an 80 month sentence is lengthy but argues

3

that it is lengthy because of Shearer's own conduct, i.e., his prior criminal convictions, the manner in which he conducted the offense, and the manner in which he conducted himself at trial. As for Shearer's medical condition, the Government submits evidence from the Bureau of Prisons, that it can adequately address Shearer's medical needs. Because Shearer's contention that he is not receiving appropriate medical care is easily resolved, the court turns first to this contention.

Shearer testified that he fell out of his bunk at the Federal Correctional Institute ("FCI") the first or second night after he arrived at the federal facility and that he suffers from disc disease and mild to moderate herniation. Shearer acknowledges that he has been consistently treated with pain medication but he testified that medical personnel told him that although he needed a consult with a neurosurgeon his condition was not "emergent" so such a consult was not available.

In response to these contentions, the Government submitted medical records showing that Shearer arrived at FCI on January 26, 2004 and presented for an initial examination. On January 28, 2004, Shearer informed Health Services that he had fallen from the upper bunk onto a table. From January 29, 2004 until April 2005, Shearer has been repeatedly seen by Health Services for complaints related to his spine, and for numbness and tingling in his lower extremities. He has been consistently prescribed pain medication during this entire time. An MRI was performed on March 29, 2004, which showed "small to moderate right far lateral disc herniation at L5-S1 with associated right L5 nerve root, corresponding with radiculopathy." (Ellis at ¶L). Based upon the MRI, on July 6, 2004, Health Services requested that Shearer be moved from FCI to a medical center for neurosurgical evaluation. This request was denied and the FCI was directed to find Shearer a local neurosurgeon for a consult. FCI approved the referral on July 23, 2004. On November 29, 2004, Shearer receive a consult with a neurologist. Shearer was then scheduled on April 19, 2005 to see

a neurosurgeon. Shearer did not attend this appointment because he was out of the FCI on federal writ for his present resentencing. However, he continues on pain medication while incarcerated at the Allen County Jail awaiting resentencing.

According to an affidavit submitted by the Government from Robert Ellis ("Ellis"), Regional Health Services Administrator for the Federal Bureau of Prisons, "Mr. Shearer will be rescheduled for a neurosurgeon consult upon his return to Bureau of Prisons ' custody." (Ellis Aff. at ¶P). Ellis further indicates that the Bureau of Prisons can adequately address Shearer's medical condition so as to provide him with appropriate medical care.

In light of the above submissions and representations from Ellis, the court is confident that Shearer is receiving necessary and appropriate medical care while incarcerated and thus, no departure from his sentence due to his medical condition is warranted. Shearer has repeatedly been seen by physicians and routine tests have been completed. Shearer did, contrary to his testimony, have a neurosurgery consult scheduled prior to his transfer to Fort Wayne. Had counsel informed the court of this appointment, the court would have rescheduled the resentencing hearing to enable Shearer to attend that appointment. Nonetheless, the court anticipates that the Bureau of Prisons will promptly, upon Shearer's return, schedule a neurosurgery consult for Shearer. Thus, the court does not find any facts warranting a sentencing departure due to the inability of the Bureau of Prisons to treat Shearer's medical condition.

This leaves the court with the heart of the matter, i.e., whether the imposition of the 80 month sentence originally imposed should be altered in light of *Booker II* and the discretion now given to the sentencing judge to consider factors outside of those considered in the guidelines. "The Supreme Court's decision in *Booker* requires the sentencing judge first to compute the guidelines sentence just

5

as he would have done before *Booker,* and then--because *Booker* demoted the guidelines from mandatory to advisory status--to decide whether the guidelines sentence is the correct sentence to give the particular defendant." *United States v. Dean*, ___ F.3d ___, 2005 WL 1592960, *2  (7th Cir.(July 7, 2005).  In this case, the court has previously calculated Shearer's guidelines sentence to be 70-87 months and the parties do not urge the court to reexamine its determination of the guidelines sentence calculation.   Thus, the guidelines sentence in this case is the 70-87 months previously determined by this court's order of October 17, 2003.

We turn next to whether a sentence within the guidelines range is the correct sentence to give Shearer.  *Id.*  Just a few days ago, the Seventh Circuit enlightened the district courts of this circuit with its opinion in *United States v. Mykytiuk*, ___ F.3d ___ , 2005 WL 1592956 (7th Cir. July 7, 2005), wherein it was explained that "any sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." *Id.* at *1-2.  The Seventh Circuit further advised that while the rebuttable presumption is a deferential standard, *Id.* (citing cases)*,* "it will be a rare Guidelines sentence that is unreasonable*."*

Having been instructed, then, that a sentence within the  guidelines range is presumptively appropriate, Shearer may still rebut this presumption" by demonstrating that his or her sentence is unreasonable when measured against the factors set forth in § 3553(a)." *Id.* (citing *Booker,* 125 S.Ct. at 766 (noting that the factors in § 3553(a) "will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."); *United States v. Webb,* 403 F.3d 373, 383 (6th Cir.2005) ("[W]e may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without

such required consideration.") (footnote omitted).  This is precisely what Shearer has attempted to accomplish through his argument that,  after consideration of the factors set forth in 18 U.S.C. § 3553(a), a non-Guidelines sentence is appropriate in this case.  In particular, Shearer notes that because there is a large disparity between the sentence in his case and other sentences for defendants convicted under the same statutory scheme, a lower sentence is appropriate.  Shearer also asserts that a non-guidelines sentence more accurately reflects the seriousness of his offense and would continue to serve as a deterrent to others.

Section 3553(a) of Title 18 of the United States Code instructs sentencing judges to "impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing."  This section further instructs that courts, in determining the particular sentence to be imposed, should consider the several factors listed in § 3553(a) including the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law,  to provide just punishment for the offense,  to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant; and  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, *id.* §3553(a)(2)(A)-(D); the sentencing range suggested by the Guidelines, *id.* § 3553(a)(4), and the need for sentencing uniformity for defendants with similar criminal histories and found guilty of similar conduct, *id.* § 3553(a)(6).

This court has given serious consideration to these factors and, in particular, to the history and characteristics of this defendant and the seriousness of the offense. As for Shearer's history, it simply does not place him in good stead for a non-guidelines sentence.  Shearer has  two drug felony convictions which  could have  placed him, but did not due to the concession by the

7

government, in a much higher guideline range than that now before the court. In addition, Shearer obstructed justice by testifying at trial and lying about material elements of the crime. Further, when looking at the seriousness of the offense, not only did Shearer engage in illegal fireworks dealing and put the public at risk[1] but, he utilized numerous minors (putting them at risk as well) and others to aid him in committing the offense. All of these factors leads the court to the conclusion that a guidelines sentence is appropriate in this case.

Nonetheless, Shearer argues that such a lengthy sentence serves neither the purpose of deterrence or the purpose of further protection of the public from future criminal conduct. Likewise, Shearer reasons that sentencing uniformity calls for a lower sentence. To support this latter argument, Shearer's counsel has submitted some evidence that sentences in other criminal cases prosecuted under the same statute as Shearer have yielded substantially lower sentences. Yet as the Government correctly notes those cases are all distinguishable given Shearer's criminal history and his conduct during the trial of this case.

Moreover, the fact that Shearer engaged in an illegal fireworks business after having two prior felony convictions indicates a repeated disrespect for the law. And, the Government is absolutely correct that while a guidelines sentence is lengthy, Shearer has earned the sentence by his criminal history, obstructing justice, and by the manner in which he conducted the offense. In

---

[1] Defendant's counsel argues that the public was not really "at risk" because the Government's own witness testified that the "worst case scenario" was a mass detonation. Counsel also cites to regulations which he claims supports the notion that a mass detonation could not have occurred given the type of explosive materials contained in the display fireworks Shearer was selling. This is contrary to the Seventh Circuit's conclusions, see *Shearer*, 379 F.3d at 455 ("display fireworks are inherently dangerous items" and "unlike consumer fireworks, display fireworks pose a risk of mass detonation,") and is a red herring for it assumes that the only risk to the public was mass detonation. Shearer intentionally mislabeled fireworks as consumer fireworks when they were actually not for consumer use. A user of such mislabeled fireworks was also at risk.

fact, Shearer's conduct technically earned him an even lengthier guidelines range but for the Government's reasonableness. Thus, while the court has considered all of the §3553(a) factors, the court concludes that none of those factors mitigate in favor of a non-guidelines sentence in this case. Having said all of this, the court has carefully considered the defendant's argument that the sentence here is disproportional to the underlying offense and find that it has some merit. As a result, the court concludes that a sentence at the low end of the applicable guidelines range is a sufficient sentence to serve the purpose of sentencing. Accordingly, the sentence will be 70 months.

SO ORDERED. This 18th day of July, 2005

s/ William C. Lee<br>
United States District Court<br>
Northern District of Indiana